# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 15 CR 598 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| RUDOLPH CALLASO, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

The Court denies Defendant Rudolph Callaso's Motion to Quash the Arrest and Suppress the Recovery of Evidence [24]. See statement for further details.

## STATEMENT

On September 29, 2015, a federal grand jury returned an indictment charging Defendant Rudolf Callaso with one count of conspiring to possess with the intent to distribute heroin, and two counts of distribution of a quantity of heroin arising from a federal wiretap investigation. Prior to this indictment, Callaso was arrested pursuant to a warrant issued following Drug Enforcement Agency Special Agent Donald Wood swearing a criminal complaint against him. Callaso seeks to quash this arrest warrant and to suppress the evidence discovered in the search incident to his arrest. Based on the parties' filings and the evidentiary hearing the Court held on September 6, 2016, the Court makes the factual findings below.

Over May 15 and 16, 2014, federal agents intercepted a series of telephone calls, with court authorization, during which the participants on the calls arranged a heroin drug deal. Based on the information obtained during these calls, the agents were able to later observe the drug deal, continuing to intercept the calls between the broker and supplier throughout. Based on their observations, the agents obtained a court order authorizing them to ascertain the physical location of the cell phone with the telephone number ending 7129 being used by the supplier (the "Subject Cell Phone").

On June 11, 2014, agents learned that the Subject Cell Phone was in the area of a residence located on South May Street in Calumet Park, Illinois. Surveillance agents observed a black Dodge Charger parked in front of the home. Around 11:50 a.m., the agents observed a female, later identified as Enoncia Littleton, enter the driver's side of the Charger and a male, later identified as Callaso, enter the passenger side of the car. At approximately 12:07 p.m., agents observed the same individuals inside the Charger while it was located at 107th Street and Halsted Avenue in Chicago. The agents learned that the Subject Cell Phone was also at or near 107th Street and Halsted Avenue at that time. The agents thus determined that the Subject Cell Phone must be in the Charger and directed Chicago Police Officers Fahey and Kelyana to pull over the car and identify the male passenger, whom agents believed owned the Subject Cell Phone.

Officers Fahey and Kelyana executed a traffic stop of the Charger. Fahey approached the driver's side of the vehicle and Kelyana approached the passenger side, where Callaso was sitting. Fahey asked the driver, Littleton, for her driver's license, but Littleton did not have her license. Fahey then asked both occupants to step out of the car, which they did. Kelyana then asked Callaso if he had any weapons. Callaso stated that he did not. Kelyana patted down Callaso and noted hard objects in his pants pocket. Callaso informed Kelyana that the objects were cell phones. Kelyana asked Callaso to empty his pockets, which Callaso did, and Kelyana placed the cell phones in the front seat of the car. Kelyana then requested Callaso's identification, which Callaso provided.

Meanwhile, Fahey asked Littleton for her name and other identifying information. Fahey ran Littleton's information through the police department's database and confirmed her identity. Fahey then asked Littleton for her consent to search her car, which she provided. While Fahey searched the vehicle, Kelyana continued speaking with Callaso. At this time Kelyana completed a contact card with Callaso's personal information. While doing so, he asked Callaso to confirm the information on his driver's license including spelling his name, his address, and his date of birth. Kelyana also asked Callaso at this time if he had any identifying scars or tattoos. Callaso verbally responded to each of these questions. Kelyana then asked Callaso for his cell phone numbers, but Callaso refused to provide the numbers. Fahey concluded his search of the car, finding no contraband.

The parties strongly disagree about what happened following the search of the car. The Government contends that the officers informed Callaso and Littleton that they were free to go, but Callaso re-engaged the officers in conversation. Callaso posits that it was the officers who continued the conversation and he was not free to leave. But the Court need not make a determination as to what actually happened once the search of the car concluded. The Court previously found the portion of the stop following the search unconstitutional and excluded any evidence obtained from that time frame. Neither party has asked the Court to revisit this ruling, and the Court declines to do so on its own.

Immediately subsequent to the stop, Fahey and Kelyana went to a law enforcement facility and listened to the May 2014 calls between the broker and the supplier. Based on their interaction with Callaso, the officers identified the voice of the supplier as belonging to Callaso. The officers testified during the evidentiary hearing that they based the identification on their entire interaction with Callaso, but that they would have been able to make the identification even if relying only on the first, non-suppressed portion of the stop.

On July 15, 2015, Special Agent Wood swore a criminal complaint [No. 15-CR-427, Doc. 1] against Callaso and several others. In the complaint, Special Agent Wood established the identity of Callaso as the supplier with two facts: that he was the only male traveling in the Charger with the Subject Cell Phone and that, in the opinion of the officers who stopped him, his voice matched that of the supplier. The same day the magistrate judge issued an arrest warrant [No. 15-CR-427, Doc. 9] for Callaso based on the information contained in the complaint.[1] The

---

[1] After Callaso's arrest, on September 29, 2015, a grand jury indicted Callaso, initiating the present case. The Government then moved on October 13, 2015 to voluntarily dismiss the previously filed criminal complaint against Callaso. This motion is still pending in No. 15-CR-427.

2

U.S. Marshals executed the arrest warrant on July 16, 2015. At the time of the arrest, the Marshals searched Callaso's home and discovered evidence that Callaso now seeks to suppress.[2]

The Court looks to the "totality of the circumstances" in determining whether an arrest warrant was supported by probable cause. *See Illinois v. Gates*, 462 U.S. 213, 238–39, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). Probable cause exists "if, at the moment when [the officer] sought the [arrest warrant], the facts and circumstances within his knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent person in believing that [the defendant] had committed the crimes." *Beauchamp v. City of Noblesville*, 320 F.3d 733, 743 (7th Cir. 2003) (citing *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991); *Neiman v. Keane*, 232 F.3d 577, 580 (7th Cir. 2000)). The officer seeking the warrant must present "[s]ufficient information . . . to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." *Gates*, 462 U.S. at 239. Thus, a law enforcement officer's "[m]ere affirmance of belief or suspicion is not enough" to demonstrate probable cause. *Id.* at 276 (citing *Nathanson v. United States*, 290 U.S. 41, 47, 54 S. Ct. 11, 78 L. Ed. 159 (1933)). Additionally, where some of the information presented in support of probable cause was not lawfully obtained, the Court must consider "whether the untainted information, considered by itself, establishes probable cause for the warrant to issue." *United States v. Johnston*, 876 F.2d 589, 592 (7th Cir. 1989) (citation omitted) (internal quotation marks omitted). If the remaining information is not sufficient, the Court should quash the warrant. *See United States v. Oakley*, 944 F.2d 384, 386 (7th Cir. 1991).

Here, the lawfully obtained evidence in support of probable cause is the geolocation evidence that places the Subject Cell Phone in the car with Callaso, the voice recognition evidence gathered during the first half of the traffic stop, and the officers' subsequent voice identification of Callaso done at the law enforcement facility. This evidence, taken together, is sufficient for a reasonably prudent person to believe that Callaso was the supplier of the May 2014 heroin deal, and therefore adequately establishes probable cause to issue the arrest warrant for Callaso.

Callaso argues that the Court should exclude all of the voice evidence under the fruit of the poisonous tree doctrine because it is impossible to disentangle the admissible and inadmissible portions. But, the fruit of the poisonous tree doctrine is not retroactive. *See United States v. Crews*, 445 U.S. 463, 472, 100 S. Ct. 1244, 1250, 63 L. Ed. 2d 537 (1980) (fruit of the poisonous tree doctrine does not operate backwards in time and require exclusion where "the toxin . . . was injected only after the evidentiary bud had blossomed"). Whether it is possible to disentangle the two portion of the stop is irrelevant; the relevant inquiry is whether the untainted information alone would have been sufficient to find probable cause to issue the warrant. *Johnston*, 876 F.2d at 592.

---

[2] Neither party has stated what the evidence in question is. Based on the Court's review of the transcript of Callaso's July 20, 2015 detention hearing in the preceding case, the evidence appears to be evidence of dog fighting and "gang writings" on the walls of the second floor of Callaso's home. No. 15-CR-427, Doc. 75 at 4–5.

Here, the voice evidence obtained from the second half of the stop was merely cumulative of the prior evidence and did not infect the officers' ability to accurately identify the voice. *See Crews*, 445 U.S. at 472 (victim's ability to identify assailant at trial based on independent recollection from the attack is not infected by suppressed intervening photograph and line-up identifications). Having greater exposure to Callaso's voice likely enhanced the reliability of the officers' conclusions, but they had sufficient exposure after the first eight minutes of the stop to identify Callaso's voice, and the fact that they subsequently obtained cumulative voice recognition evidence does not render the legally obtained evidence excludable. The evidence gathered in the first half of the stop is sufficient to support probable cause, therefore the warrant is valid.

Because the Court finds that there was probable cause supported by sufficient legally obtained evidence to issue the warrant, the Court denies Callaso's motion to quash his arrest and suppress the evidence obtained as a result of that arrest.

Date: October 17, 2016                                        /s/ Sara L. Ellis